1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

JESSICA MUIR,

Case No.:  16-CV-3049-JLS (BGS)

12

Plaintiff,

13

v.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

14

NATIONAL CREDIT ADJUSTERS, LLC,

15

(ECF No. 7)

16

Defendant.

17
18

Presently before the Court is Plaintiff Jessica Muir's Motion for Default Judgment

19

against National Credit Adjusters, LLC, ("MTN," ECF No. 7).  Defendant has not appeared

20

in this case.  After considering Plaintiff's argument and the law, the Court rules as follows.

21

**BACKGROUND**

22

Plaintiff filed a Complaint against Defendant National Credit Adjusters, LLC

23

alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Electronic

24

Fund Transfer Act ("EFTA"), and the Rosenthal Fair Debt Collection Practices Act

25

("RFDCPA").  ("Compl.," ECF No. 1.)  Before December 18, 2016, Plaintiff states she "is

26

alleged to have incurred financial obligations . . . for a personal consumer loan." (*Id.* ¶ 28.)

27

Plaintiff states the "financial obligations were primarily for personal, family, or household

28

purposes."  (*Id.* ¶ 29.)  Plaintiff "allegedly fell behind in the payments" toward the alleged

debt. (*Id.* ¶ 31.)[1]  The alleged debt was then assigned to Defendant for collection. (*Id.* ¶ 32.)  Plaintiff alleges Defendant is a debt collector because it regularly engages in debt collections on behalf of others and itself. (*Id.* ¶ 19.)  Plaintiff states "Defendant telephoned [her] and demanded payment of the alleged debt." (*Id.* ¶ 33.)  Defendant allegedly "intimated and coerced Plaintiff into offering payment towards the alleged debt" in the phone call. (*Id.* ¶ 36.)  Plaintiff alleges Defendant implied her "wages would be garnished if payment was not sent . . . immediately," and "threatened to take action that cannot legally be taken or that is not intended to be taken." (*Id.* ¶¶ 37, 38.)  Plaintiff "conceded and agreed to pay $50.00 per month . . . until the balance was paid." (*Id.* ¶ 41.)  Plaintiff states Defendant withdrew funds from her account on December 18, 2016, January 19, 2016, February 19, 2016, March 18, 2016, April 18, 2016, May 18, 2016, and June 20, 2016. (*Id.* ¶ 58.)  Plaintiff states Defendant did not receive her written authorization or provide her with a copy of her written authorization for the unauthorized electronic fund transfers. (*Id.* ¶¶ 47, 48.)  Plaintiff also alleges "Defendant failed within five days after its initial communication with Plaintiff" to provide notice that unless Plaintiff disputed the validity of the debt within thirty days after receiving the notice, Defendant would assume the debt is valid. (*Id.* ¶ 56.)  In July 2016, "Defendant contacted [her] by telephone again" and told her that "she needed to agree to send in larger payments or Defendant would take further collection action" even though Defendant previously told her "she could pay $50.00 per month until the total was paid." (*Id.* ¶¶ 64, 65, 67.)

Plaintiff alleges Defendant's conduct violated the FDCPA, the EFTA, and the RFDCPA.  As a result, Plaintiff seeks a total amount of $6,243.96.

Plaintiff requests a total award of $3,500.00 to compensate her for her damages.  This amount represents the sum of Plaintiff's actual damages of $500.00, Plaintiff's statutory damages of $1,000.00 under FDCPA, $1,000.00 under the RFDCPA, and $1,000.00 under the EFTA.  Plaintiff is also entitled to recovery of her reasonable attorney's fees in this matter in the amount of

---

[1] Plaintiff refers to the money Defendant was assigned to collect from her as the "alleged debt." (Compl. ¶ 31.)  The Court will do the same.

16-CV-3049-JLS (BGS)

$2,242.50 and costs of $501.46.
(MTN 27).

Plaintiff filed a proof of service indicating that a process server served Plaintiff's Complaint on Defendant's registered agent. (ECF No. 3.) Defendant has failed to answer despite being served. Plaintiff has obtained an entry of default against Defendant, (ECF No. 6), and now brings a motion for default judgment. (*See generally* MTN.) Upon request by the Court, Plaintiff has provided supplemental briefing as to whether she properly served Defendant. (ECF No. 9.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a court to enter default judgment after entry of default. A court is to grant or deny default judgment at its discretion. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (citing *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). The Ninth Circuit has set out seven factors for a court to consider when exercising this discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72 (citation omitted).

"[U]pon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citations omitted). To prove damages, a plaintiff may submit declarations or the Court may hold an evidentiary hearing. *See Affinity Grp., Inc. v. Balser Wealth Mgmt.*, No. 05cv1555 WQH (LSP), 2007 WL 1111239, at *1 (S.D. Cal. Apr. 10, 2007).

# ANALYSIS

## I. Procedural Matters

Before turning to the merits, the Court must assess whether it has jurisdiction to enter default judgment against Defendants. Furthermore, the Court must determine whether service of process in this matter was proper.

### A. Personal Jurisdiction

The court must have personal jurisdiction over each defendant before it may enter default judgment, or else entry of default judgment is void. *See Bittorrent, Inc. v. Bittorrent Mktg. GMBH*, No. 12-CV-02525-BLF, 2014 WL 5773197, at *3 (N.D. Cal. Nov. 5, 2014) (citing *Veeck v. Commodity Enters., Inc.*, 487 F.2d 423, 426 (9th Cir. 1973)). The burden is on the plaintiff to show that personal jurisdiction exists over each defendant. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds* by *Daimler AG v. Bauman*, 571 U.S. 117 (2014).

The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "Purposeful direction" and "purposeful availment" are two different concepts. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). "A purposeful availment analysis is most often used in suits sounding in contract" and "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort" and "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of

goods originating elsewhere." *Id*. at 802–03.  In *Branca vs. Ocwen Loan Servicing, LLC*, a California federal district court applied a purposeful direction analysis to determine whether it had jurisdiction over a defendant who the plaintiff alleged violated the Federal Debt Collection Practices Act. No. CV 13-7502 BRO, 2013 U.S. Dist. LEXIS 201815, at *29–30 (C.D. Cal. Dec. 27, 2013); *see also Patterson v. Latimer Levay Jurasek LLC*, No. 09-0567, 2009 U.S. Dist. LEXIS 55047, at *7 (S.D. Cal. June 29, 2009) (same).  The Court agrees this is the correct analysis and will perform a purposeful direction analysis.

### 1.  Purposeful Direction of Activities

In applying this test, the court "typically inquire[s] whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (quoting *Schwarzenegger*, 374 F.3d at 803). This test, often referred to as the "*Calder* effects" test, derives from *Calder v. Jones*, 465 U.S. 783 (1984).  The defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Calder*, 465 U.S. 783).  All three parts of the test must be satisfied. *Schwarzenegger*, 374 F.3d at 805.  However, the Ninth Circuit has warned courts not to focus too narrowly on the effects prong of this test, holding that "something more" is needed in addition to a mere foreseeable effect.  *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

As to the requirement of an intentional act, the Court finds this element is met because Plaintiff has alleged Defendant acted intentionally in telephoning her to demand payment of the alleged debt.  (Compl. ¶ 33.)

The express aiming requirement is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters*, 233 F.3d at 1087.  In *Calder*, the

5

defendants wrote an article in Florida about the plaintiff, a California citizen, for a national magazine. 465 U.S. at 786. The plaintiff accused the defendant of libel. *Id.* at 784. The defendants moved to quash the service of process for lack of personal jurisdiction, which the Court analyzed under an "effects" test. *Id.* The Court found that by knowing the plaintiff resided in California, the defendants knew the impact of their actions would be felt in California, which constituted express aiming. *Id.* 789–790. In *Dole Food Co. v. Watts*, the defendants worked for the plaintiff company. 303 F.3d 1104, 1107 (9th Cir. 2002). The defendants "communicated frequently with management in [plaintiff's] California's offices via telephone, fax, and mail" about implementing a new importing system. *Id.* at 1109. Thus, the court found the defendants expressly aimed their actions at California because they knew the plaintiff's principal place of business was in California, knew the decisionmakers for the plaintiff were in California, and communicated with them directly. *Id.* at 1112.

Here, Plaintiff argues Defendant engaged in wrongful conduct targeted at Plaintiff who Defendant knew lived in California. (*See* Compl. ¶ 23). As in *Dole*, Defendant not only knew Plaintiff resided in California but also communicated directly with her. (Compl. ¶ 33.) Plaintiff alleges Defendant telephoned her multiple times for payment of the alleged debt. (*Id.* ¶¶ 33, 36, 39.) Therefore, Plaintiff's Complaint alleges facts sufficient to show that Defendant engaged in wrongful conduct targeted at Plaintiff who Defendant knew lived in California. Thus, the express aiming requirement of the *Calder* effects test is satisfied.

Finally, the third requirement of the *Calder* effects test requires the defendant to cause harm that he or she knows is likely to be suffered in the forum state. *Calder*, 465 U.S. at 783. It is clear Plaintiff suffered the brunt of her harm in California. Plaintiff alleges that Defendant's actions caused Plaintiff to concede and pay a monthly amount by electronic debit even though she never signed an authorization for any charges. (*Id.* ¶ 47). Furthermore, Plaintiff alleges Defendant's actions have caused "mental anguish type damages." (*Id.* ¶ 72). As Plaintiff is a resident of California, she undoubtedly suffered the

brunt of Defendant's actions in California. Thus, the Court finds the third requirement of the *Calder* effects test has been met.

### 2. *Relatedness*

For the second prong of the personal jurisdiction test, "[t]he Ninth Circuit adopted the 'but for' test to determine the 'arising out of' requirement." *Fighter's Mkt., Inc. v. Champion Courage LLC*, 207 F. Supp. 3d 1145, 1155 (S.D. Cal. 2016) (citing *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761 (9th Cir. 1990)).

Here, Plaintiff's claims arise out of Defendant's telephone calls. As discussed above, it is alleged that Defendants' conduct harmed Plaintiff in California by causing her to concede to and accept Defendant's demands. Plaintiff paid a monthly amount by electronic debit even though she never signed an authorization for any charges and suffered mental anguish. But for Defendant's phone calls, Plaintiff would have not conceded to and accepted Defendant's demands. Accordingly, the Court finds that Defendant's actions are related to Plaintiff's claims.

### 3. *Fair Play and Substantial Justice*

The third prong of the personal jurisdiction test states the exercise of jurisdiction must comport with fair play and substantial justice. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). After the plaintiff meets the burden to satisfy the first two prongs of the specific jurisdiction test have been met, the burden then shifts to the defendant to present a "compelling case" that jurisdiction does not comport with fair play and substantial justice. *See Schwarzenegger*, 374 F.3d at 802. In *Herman Miller, Inc. v. Alphaville Design*, the court found "no compelling reasons . . . as to why the exercise of jurisdiction over [defendant] would be unreasonable" because the defendant "failed to plead or otherwise defend" the case. No. C 08-03437 WHA, 2009 U.S. Dist. LEXIS 103384, at *9–10 (N.D. Cal. Oct. 22, 2009).

Plaintiff has met its burden on the first two prongs. Like in *Herman Miller*, Defendant has not appeared or responded to any of Plaintiff's allegations, much less her arguments here. And, the Court cannot discern how its exercise of jurisdiction over

Defendant would be unfair or unjust.

Accordingly, the Court finds that it has personal jurisdiction over Defendant.

**B.   Service of Process**

Plaintiff filed a proof of service indicating that a process server served Plaintiff's Complaint on "Fanny Xiong, Agent for [Corporate Service Company]." (ECF No. 3.) Defendant's registered agent for service of process is Corporate Service Company. ("Yana Decl.," ECF No. 5-1, ¶ 5; *see also* ECF No. 5-3.)

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rule of Civil Procedure 4." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009). "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *UFCW, Locals 197 & 373 v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). Pursuant to the Federal Rules of Civil Procedure, an individual or corporation "may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3) & (g). Service under Rule 4(f)(3) must be directed by the court, not prohibited by international agreement, and comport with constitutional notions of due process. *Rio Props., Inc.*, 284 F.3d at 1014–16. It is within a court's discretion "to craft alternate means of service." *Id.* at 1016. For a corporate defendant, service must be in accordance with Rule 4(h).

*1. Rule 4(h)(1)(B)*

Under Rule 4(h)(1)(B), service may be effected by delivering the complaint and summons to an officer, managing or general agent, or an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(h)(1)(B). "Even if a person states that he or she is authorized to accept service, that is not proof that the person actually has the authority to do so." *Aspire Home Healthcare, Inc. v. Therastaff, LLC*, No. 13-CV-2917-MMA, 2014 WL 12539703, at *2 (S.D. Cal. Apr. 11, 2014) (quoting *United States*

*CFTC v. Paron Capital Mgmt., LLC*, No. C11-4577CW, 2012 WL 1156396, at *2 (N.D. Cal. Apr. 6, 2012)).

Plaintiff argues she properly served Defendant because Fanny Xiong informed the process server she was authorized to accept service for CSC. (ECF No. 9.) But, just as in *Aspire Home Healthcare* and *United States CFTC*, Xiong's statement of authorization alone does not prove Plaintiff satisfied Rule 4(h)(1)(B)'s requirement that the complaint and summons be delivered to an officer, managing or general agent, or an agent authorized by appointed or by law. Indeed, it is evident from the Secretary of State website, (ECF No. 5-3), that CSC is Defendant's registered agent for service of process. But, the Secretary of State website does not show that Xiong is the registered agent for CSC or for Plaintiff. (ECF No. 5-3.) Plaintiff's Response to Order to Show Cause, (ECF No. 9), does not provide any support behind Xiong's statement that she had actual authority to accept service of process. Thus, Plaintiff has not proven that service complied with Rule 4(h)(1)(B) because there is no evidence that Xiong is one of the people approved to receive service for CSC.

### 2. *Rule 4(h)(1)(A)*

Under Rule 4(h)(1)(A), a plaintiff is able to serve a defendant in the manner prescribed by Rule 4(e)(1). Rule 4(e)(1) states a party may follow the procedures of the state in which the district court is located to serve a summons and complaint. Fed. R. Civ. P. 4(e)(1). Under section 416.10 of the California Code of Civil Procedure, a corporation may be served by delivering a copy of the summons and complaint to, among others, "a person authorized by the corporation to receive service of process." Cal. Civ. Proc. Code § 416.10(b).

Even if an agent was not actually authorized to accept, service is binding if the agent possessed ostensible authority to accept service. *See Pasadena Medi-Center Assocs. v. Superior Court*, 9 Cal. 3d 773, 781 (1973); *see also* Cal. Civ. Code § 2317. Civil Code section 2317 states "ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." However,

an agent's statement alone does not establish ostensible authority; the principal must have engaged in some conduct that causes a third party to believe the agent has actual authority to accept service. *Big B Auto Warehouse Distribs., Inc. v. Coop. Computing, Inc.*, No. SC 00-2602, 2000 LEXIS 16363, at \*12 (N.D. Cal. Oct. 31, 2000). If a principal's silence about its agent's authority causes a third party to believe the agent possesses actual authority, then ostensible authority is established. *Preis v. Am. Indemnity Co.*, 220 Cal. App. 3d 752, 761 (Ct. App. 1990) (citing *Leavens v. Pinkham & McKevitt*, 128 P. 399 (Cal. 1912)). In *Big B Auto Warehouse Distributors*, the plaintiff delivered the complaint and summons to an attorney who stated he was an agent authorized to accept service of process for the defendant. 2000 LEXIS 16363, at \*14. The court held that the attorney possessed ostensible authority to accept service because if the defendant did not authorize the attorney to accept service, the defendant should have informed the plaintiff. *Id.* at \*11, 14. The defendant's silence gave the impression that the attorney was an authorized agent. *Id.* at \*14. Additionally, in *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, the court held that service is sufficient if it is made upon an individual who is in a position as to render it fair, reasonable, and just to imply the individual had the authority to receive service. 840 F.2d 685, 688 (9th Cir. 1988).

Here, in order for the service in December 2016 to satisfy § 416.10(b), Xiong must have been a "person authorized by the corporation to receive service of process." Cal. Civ. Proc. Code § 416.10(b). Defendant only designated CSC as a whole to accept service, (ECF No. 5-3), but it appears it could have specified individuals within CSC as agents. *See Pryor v. Heart 'N Soul Tax Servs. of Vallejo, Inc.*, No. 07CV0424 DMS, 2008 WL 11226923, at \*1 (S.D. Cal. Jun. 26, 2008). It is not clear whether Xiong was actually authorized to receive service pursuant to § 416.10(b). However, even if Xiong was not actually authorized to accept service in December 2016, service is binding under California law if Xiong possessed ostensible authority to accept service. As in *Big B Auto Warehouse Distributors*, Plaintiff delivered the complaint and summons to Xiong because she told the process server she was an authorized agent for CSC. (ECF No. 9.) If Xiong was not

authorized by CSC to accept service, CSC should have informed Plaintiff. CSC and Defendant's silence gave Plaintiff the impression Defendant had been properly served. There has been no indication by CSC that service was improper. CSC is a company that specifically receives service on the behalf of other companies, which implies authority on anyone there to accept service. Like in *Direct Mail Specialists*, service was made on Xiong, an individual who was in a position as to render it was fair, reasonable and just to imply she had the authority to receive service as CSC's agent. Thus, there is sufficient evidence that Xiong had ostensible authority to accept service of process.

Therefore, service was proper under Rule 4(h)(1)(A). The Court now proceeds to the merits of Plaintiff's Motion for Default Judgment.

## II.    Default Judgment

Under Rule 55 of the Federal Rules of Civil Procedure, entering a default judgment is a two-step process. *See* Fed. R. Civ. P. 55; *see also Eitel*, 782 F.2d at 1471. In order to obtain default judgment, a plaintiff must first obtain an entry of default. After entry of default, a district court has discretion to grant or deny a motion for default judgment. *Aldabe*, 616 F.2d at 1092. Because Plaintiff obtained an entry of default judgment against Defendant, (ECF No. 6), the Court will examine the *Eitel* factors.

### A.    Possibility of Prejudice to Plaintiff

*Eitel*'s first factor looks to whether a plaintiff would suffer prejudice if its motion were denied. 782 F.2d at 1471; *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Because Plaintiff "will likely be without other recourse for recovery" were this Court to deny their motion, this factor weighs in favor of default judgment. *PepsiCo*, 238 F. Supp. 2d at 1177.

/ / /

/ / /

/ / /

**B.    The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The second and third *Eitel* factors address the substantive merits of the claim and the sufficiency of the complaint.  782 F.2d at 1472; *Affinity Grp.*, 2007 WL 1111239, at *2. The Ninth Circuit has suggested that these factors require that a plaintiff "state a claim on which the [plaintiff] may recover."  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  The Court will analyze each of Plaintiff's causes of action.

*1.   Fair Debt Collection Practices Act (Under 15 U.S.C. § 1692)*

The Fair Debt Collection Practices Act bars debt collectors "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995).  The FDCPA is a strict liability statute that "makes debt collectors liable for violations that are not knowing or intentional."  *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008).  To prevail on a FDCPA claim, a plaintiff must show "(1) [the plaintiff] was a consumer (2) who was the object of a collection activity arising from a consumer debt, and (3) the defendant is a 'debt collector' as defined by the FDCPA, (4) who engaged in an act or omission prohibited by the FDCPA."  *Townsend v. Nat'l Arbitration Forum, Inc.*, No. CV 09-9325-VBF, 2012 WL 12736, at *8 (C.D. Cal. Jan. 4 2012) (citing *Miranda v. Law Office of D. Scott Carruthers*, No. 1:10-cv-01487 OWW SMS, 2011 WL 2037556, at *4 (E.D. Cal. May 23, 2011); and *Turner v. Cook*, 362 F.3d 1219, 1227–28 (9th Cir. 2004)).  Consumer means "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  Section 1692a(d) defines debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  Debt is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money . . . [is] primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5).

12

Not all obligations to pay are considered debts under the FDCPA. *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001). Before categorizing a debt as one that falls under the FDCPA, a court must inquire "into what [the plaintiff] purchased" to incur the debt. *Davis v. Hollins Law*, 968 F. Supp. 2d 1072, 1079 (E.D. Cal. 2016). In *Bloom v. I.C. System Inc.*, the court held that the plaintiff's loan from a friend did not fall under the FDCPA because the plaintiff borrowed the money to invest in a software company. 972 F.2d 1067, 1068–69 (9th Cir. 1992). In *Slenk*, the plaintiff used a loan to purchase a backhoe for the construction of his family home. 236 F.3d at 1075. The court found the plaintiff's allegation that he purchased the backhoe solely to build his family home was insufficient to categorize his loan as one under the FDCPA. The court reasoned the purchase invoice for the backhoe stated plaintiff's business had purchased it, the city building permit for the plaintiff's home indicated his business would handle the construction, and his tax returns characterized the backhoe as a business asset. *Id.* The court stated that "courts [have to] 'look to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone.'" 236 F.3d at 1075 (quoting *Riviere v. Banner Chevrolet, Inc*, 184 F.3d 457, 462 (5th Cir. 1999)).

Plaintiff sufficiently alleges she is a consumer who incurred financial obligations for a loan. (Compl. ¶ 26); *see also* 15 U.S.C. § 1692a(3). Plaintiff also sufficiently alleges Defendant is a debt collector because it regularly engages in debt collections on behalf of others and itself. (Compl. ¶ 19); *see also* 15 U.S.C. § 1692a(d). However, Plaintiff insufficiently alleges her debt qualifies under section 1692a(5). *See Bloom*, 972 F.2d at 1068–69 (stating that when classifying a loan, courts need to look at the transaction as whole, especially to the specific reason why the loan was needed). Plaintiff only cursorily alleges her loan was for personal, family or household purposes. (*See* Compl. ¶ 29.) Plaintiff did not specifically state the reason why she needed the loan. Like in *Slenk*, Plaintiff's allegation that her loan was for personal, family or household purposes is not enough for the Court to determine her loan falls under the FDCPA. The court needs to know the "substance of the transaction[s]" made under Plaintiff's loan to determine

whether it falls under the FDCPA.  *Slenk*, 236 F.3d at 1075.  Because it is unclear whether Plaintiff's loan falls under the FDCPA, Plaintiff has not stated a claim on which she may recover.

### 2.   *Rosenthal Fair Debt Collection Practices Act (Under California Civil Code § 1788)*

The RFDCPA is the California state equivalent of the FDCPA.  *See* Cal. Civ. Code § 1788 *et. seq.*  The RFDCPA "mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations."  *Riggs v. Prober & Raphel*, 681 F.3d 1097, 1100 (9th Cir. 2012).  The RFDCPA states that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j" of the FDCPA.  Cal. Civ. Code § 1788.17.   The definition of "consumer debt" under the RFDCPA means money owed from a person "by reason of a consumer credit transaction."  Cal. Civil Code § 1788.2(f).  In turn, the definition of "consumer credit transaction" means a transaction where money is acquired by a person "primarily for personal, family, or household purposes." § 1788.2(e).  Because Plaintiff's RFDCPA claim is based on the same allegations as her FDCPA claim, the analysis above, *see supra* section II.B.1, applies here.  Plaintiff has not sufficiently alleged her debt qualifies under the RFDCPA.  Plaintiff's RFDCPA claim also fails.

### 3.   *Electronic Fund Transfer Act (Under 15 U.S.C. § 1693)*

Under the EFTA, "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit" is prohibited.  15 U.S.C. § 1693a(12).  The EFTA only applies to electronic fund transfers from "consumer accounts," which include "demand deposit[s], savings deposit[s], or other asset account[s]."  15 U.S.C. § 1693a(2).  A "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and copy of such authorization shall be provided to the consumer when made."  15 U.S.C. § 1693e(a).  Section 1693a(9) defines a preauthorized

electronic fund transfer "as an electronic fund transfer authorized in advance to recur at substantially regular intervals."

Here, Plaintiff alleges "Defendant executed several unauthorized electronic fund transfer from [her] account." (Compl. ¶¶ 58, 60.)   Plaintiff alleges Defendant did not receive her written authorization or provide her with a copy of her written authorization for preauthorized electronic fund transfers. (*Id.* ¶¶ 47, 48.)  Plaintiff has sufficiently alleged Defendant violated section 1693(e). *See Berry v. Webloyalty.com, Inc.*, No. 10-CV-1358-H (CAB), 2010 WL 8416525, at *3 (S.D. Cal. Nov. 16, 2010) (finding that plaintiff sufficiently alleged a claim under EFTA because plaintiff stated he did not give defendant consent to charge him for its membership program).

In sum, the merits and sufficiency of the allegations favor entering default judgment on Plaintiff's EFTA cause of action against Defendant.   However, the merits and sufficiency of the allegations do not favor entering default judgment on Plaintiff's FDCPA or RFDCPA claims.

### C. The Sum of Money at Stake in the Action

The fourth *Eitel* factor examines the amount of money at issue.  782 F.2d at 1471. "[T]he court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176–77. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable.  Default judgment is disfavored when a large amount of money is involved or unreasonable in light of the potential loss caused by the defendant's actions." *HICA Educ. Loan Corp. v. Warne*, No. 11-CV-04287-LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citations and internal quotation marks omitted).

Here, Plaintiff seeks a total amount of $6,243.66.  (MTN 27.)  $500.00 is sought for actual damages.  Plaintiff seeks $1,000 under the FDCPA, $1,000 under the RFDCPA, and $1,000 under the EFTA.  Plaintiff also requests attorney's fees in the amount of $2,242.50 and costs of $501.46.  Given that there is not a substantial amount of money at stake in this case, this factor weighs in favor for the entry of default judgment.

### *D. The Possibility of a Dispute Concerning Material Facts*

The fifth *Eitel* factor examines the likelihood that the material facts in the complaint are disputed.  782 F.2d at 1471–72.  "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages."  *PepsiCo*, 238 F. Supp. 2d at 1177 (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)).  Because Defendant has not answered, there is unlikely to be a dispute of material facts in this case.

### *E. Possibility of Excusable Neglect*

The sixth *Eitel* factor examines the likelihood that a defendant's default is the result of excusable neglect.  782 F.2d at 1472.  In *S.E.C. v. Gahr*, the Ninth Circuit held that defendant's failure to answer the complaint was not a result of excusable neglect because the defendant did not show he was not responsible for the conduct that led to the default, did not have a meritorious defense to the plaintiff's complaint, and did not prove the reopening of the default judgment would not prejudice the plaintiff.  111 F. App'x. 890, 891 (9th Cir. 2004) (citing *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004)).

In this case, like *Franchise Holding II*, Defendant has failed to answer despite being served.  Given that Defendant was properly served, the default is unlikely accidental or a result of neglect.  Thus, this factor weighs in favor of granting default.

### *F. Policy Favoring Decisions on the Merits*

The seventh *Eitel* factor concerns "the general rule that default judgments are ordinarily disfavored."  782 F.2d at 1472.  "While the public policy favoring disposition of cases on their merits weighs against default judgment, that single factor is not enough to preclude imposition of this sanction" on its own.  *Rio Props., Inc.*, 284 F.3d at 1022.  "Moreover, [a] Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible."  *PepsiCo*, 238 F. Supp. 2d at 1177.  Thus, while this factor weighs against default, this Court is not precluded from entering default judgment in this action.

Based on the foregoing analysis, the Court finds that the *Eitel* factors in favor of granting default judgment outweigh the strong public policy favoring decisions on the merits for Plaintiff's EFTA claim, but not her FDCPA or RFDCPA claims. The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Default Judgment. The Court **ENTERS** default judgment on Plaintiff's EFTA claim.

## III.   Remedies

Plaintiff seeks damages, attorney's fees, and costs.  As to damages for Plaintiff's EFTA claim, Plaintiff seeks actual damages and statutory damages of $1,000.00.  (MTN 14, 27.)  Plaintiff also seeks attorney's fees in the amount of $2,242.50 and costs of $501.46.  (*Id.*)  In assessing remedies, the Court does not take the allegations in the Complaint as true and will examine the evidence offered by Plaintiff in support of each form of requested relief.  *Televideo*, 826 F.2d at 917–18.  If a plaintiff is unable to demonstrate entitlement to damages, a court can allow a plaintiff to file additional documentation to show "how the requested damages were calculated and the basis for those calculations."  *Bd. of Trustees of Plumbers & Pipefitters Nat'l Pension v. A.R. Air Conditioning, Inc.*, No.: SACV 17-01062-CJC(JCGx), 2018 WL 1149665, at *1 (C.D. Cal. Jan. 9 2018).

Plaintiff has not sufficiently detailed why she alleges she is entitled to maximum statutory damages, nor has she provided any information or background regarding her request for actual damages.   Thus, the Court allows Plaintiff to file additional documentation to show how her requested damages were calculated and the basis for those calculations.

## CONCLUSION

In sum, the Court:

1. **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Default Judgment, (ECF No. 7);

2. **ENTERS** Judgment in favor of Plaintiff against Defendant for Plaintiff's EFTA cause of action;

3.  **PERMITS** Plaintiff to file additional documentation with the required support for her requested damages;

4.  **PERMITS** Plaintiff to file an amended complaint that addresses the deficiencies noted herein. Plaintiff's amended complaint must be complete by itself without reference to her original pleading;

5.  The Court will close this case if Plaintiff does not file either an amended complaint or additional documentation regarding damages <u>within 30 days from the date on which this Order is electronically docketed</u>.

    **IT IS SO ORDERED.**

Dated:  June 29, 2018

Hon. Janis L. Sammartino
United States District Judge

16-CV-3049-JLS (BGS)